Filing # 258530253 E-Filed 10/05/2026 04:48:59 PM

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT, IN AND FOR ST. JOHNS COUNTY, FLORIDA

AVA PYSZCZYMUKA,

Plaintiff,

Case No.: 2025-CA-1430

v.

Division: 59

ST. JOHNS COUNTY,

Defendant.

_______________________________/

**SECOND AMENDED COMPLAINT FOR RELIEF AND DEMAND FOR JURY TRIAL**

COMES NOW, Plaintiff, AVA PYSZCZYMUKA, by and through the undersigned attorneys and files this Second Amended Complaint for Relief and Demand for Jury Trial against Defendant St. Johns County, and in support thereof states as follows:

**NATURE OF ACTION**

1. Count one of the Second Amended Complaint states a claim brought by Plaintiff for monetary damages and to enjoin Defendant's retaliatory practices as prohibited by the Florida Public Sector Whistleblower Act, § 112.3187, Fla. Stat. (hereinafter the "FWA")

2. Count two of the Second Amended Complaint states a claim brought by Plaintiff for monetary damages and to enjoin Defendant's retaliatory practices as prohibited by the Florida Civil Rights Act, § 760.10, Fla. Stat. (hereinafter the "FCRA")

3. Count three of the Second Amended Complaint states a claim brought by Plaintiff for monetary damages and to enjoin Defendant's discriminatory practices as prohibited by the FCRA.

Accepted 10/06/2026 03:23 PM by the Clerk of the Circuit Court, St. Johns County, Florida, DIN: 42

4. Count four of the Second Amended Complaint states a claim brought by Plaintiff for monetary damages and to enjoin Defendant's retaliatory practices as prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) (hereinafter "Title VII").

5. Count five of the Second Amended Complaint states a claim brought by Plaintiff for monetary damages and to enjoin Defendant's discriminatory practices as prohibited by the Americans with Disabilities Act of 1990, as amended by the ADA Amendments Act of 2008, 42 U.S.C. § 12112(a) and (b)(5)(A) (hereinafter the "ADA").

6. This is an action for damages in excess of $50,000.00.

7. This Court has subject matter jurisdiction over this action pursuant to Florida Statutes section 26.012.

8. At all times material to this Complaint, Plaintiff resided in St. Johns County, Florida.

9. Defendant's Board of County Commissioners is the legislative and governing body of St. Johns County and has the delegated authority described in Florida Statutes section 125.01, et seq.

10. Defendant is the properly named party in the instant action pursuant to Florida Statutes section 125.15.

11. Defendant is an agency as defined by Florida Statutes section 112.3187(3)(b).

12. Plaintiff is an employee as defined by Florida Statutes section 112.3187(3)(c).

13. Plaintiff is a person as defined by Florida Statutes section 760.02(6).

14. Defendant is an employer as defined by Florida Statutes section 760.02(7).

15. At all times material, Plaintiff was an "employee" as defined by 42 U.S.C. § 2000e(f).

16. At all times material, Plaintiff was an "employee" as defined by 42 U.S.C. § 12111(4).

17. At all times material, Defendant was an "employer" as defined by 42 U.S.C. § 2000e(b).

18. At all times material, Defendant was a "covered entity" as defined by 42 U.S.C. § 12111(2).

19. At all times material, Defendant was an employer" as defined by 42 U.S.C. § 12111(5)(A), in that Defendant is a political subdivision of the State of Florida that employed fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year.

20. The actions and occurrences resulting in the instant litigation occurred within St. Johns County, Florida.

21. Venue is proper in this Court.

**ADMINISTRATIVE PREREQUISITES**

22. On December 17, 2025, Plaintiff filed a verified Charge of Discrimination with the EEOC, Charge No. 510-2026-04319, which was dual filed with the Florida Commission on Human Relations (hereinafter "FCHR"), alleging retaliation and disability discrimination and seeking relief under Title VII and the ADA.

23. Plaintiff received a Notice of State Rights from the Florida Commission on Human Relations on September 8, 2026. Ex. 1.

24. More than 180 days after the filing of her charge and because Defendant is a governmental entity, on August 11, 2026, the EEOC forwarded Plaintiff's request to the U.S.

Department of Justice ("DOJ") for issuance of the notice. *See* 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.28(d).

25. On August 11, 2026, the DOJ issued Plaintiff a Notice of Right to Sue, which Plaintiff received the same day. Ex. 2. This action is brought within ninety days of Plaintiff's receipt of the Notice of Right to Sue.

26. All conditions precedent to the filing of this action have been performed, have occurred, or have been waived or excused.

**GENERAL ALLEGATIONS**

27. During the relevant time period, Plaintiff was employed as an Application Review Supervisor within Defendant's Growth Management Services Department.

28. On approximately August 5, 2024, one of Plaintiff's subordinate employees notified her that a security guard working in the office was sexually harassing her on the job, including making inappropriate statements to the employee because of her sex, in a manner that made the employee uncomfortable.

29. In response to the report of workplace sexual harassment, Plaintiff notified her second-line supervisor of harassment and expressed her concerns about the employee's workplace safety because the security guard carried a gun.

30. Management refused to escalate the report to human resources, including when Plaintiff escalated her complaints to her department's director, and permitted the security guard to continue working normally, prompting Plaintiff to report the workplace harassment to Defendant's human resources department on approximately August 6, 2024.

31. On August 9, 2024, Plaintiff further reported to human resources that the same security guard had approached another female employee using nearly identical lines to those he had used with Plaintiff and her subordinate, leaving that employee uncomfortable.

32. After Plaintiff escalated the complaints of workplace sexual harassment to human resources, the security guard accused of having engaged in harassment was removed from the office.

33. On August 28, 2024, Defendant issued a corrective action notice against Plaintiff arising from her complaints about the security guard's harassment, alleging that Plaintiff "overreacted" to the harassment, "misrepresent[ed]" the employee's concern and asserted that Plaintiff improperly "threaten[ed] to go to HR" and "demand[ed] the guard's immediate removal."

34. On September 13, 2024, Plaintiff's department director told Plaintiff that the corrective action notice was issued because Plaintiff "overstep[ed]" when she reported workplace sexual harassment to human resources.

35. Plaintiff immediately reported the issuance of the corrective action notice to human resources out of concern that she was being subject to retaliation.

36. When human resources failed to respond to Plaintiff's concerns that the corrective action notice evinced Defendant's intent to retaliate against her for reporting workplace sexual harassment, on September 15, 2024, Plaintiff reported her concerns to County Administrator Joy Andrews, who responded she would follow up, but did not appear to take further action.

37. On January 22, 2025, Defendant provided Plaintiff with her annual performance review appraisal, which rated Plaintiff a 2/5, indicating she "does not meet expectations" in the area of "self-awareness." In support of this rating, Defendant cited the August 28, 2024 corrective action notice.

38. On January 28, 2025, Plaintiff met with her supervisor to request an opportunity to respond to the allegations in the self-awareness section of the annual performance review appraisal, to which her supervisor responded by yelling at Plaintiff that she is "done" with Plaintiff, ordering her to "get out" of the office.

39. Immediately thereafter, Plaintiff reported the incident to Defendant's human resources department.

40. That same day, Plaintiff's supervisor, whose conduct Plaintiff had just reported, went to Defendant's human resources department and requested that Defendant terminate Plaintiff's employment.

41. On January 30, 2025, two days after Plaintiff's report, Plaintiff's department director—who participated in issuing the August 28, 2024 corrective action notice and who had told Plaintiff that she "overstep[ed]" by reporting workplace sexual harassment to human resources—met with Defendant's Human Resources Director and requested that Plaintiff be terminated or demoted to a non-supervisory position.

42. On February 3, 2025, after having received no communication to address the January 28th incident, Plaintiff escalated her concerns to Defendant's five county commissioners via email. In her email, Plaintiff reported concerns about the retaliation to which she had been subjected as a result of her reporting workplace sexual harassment to human resources.

43. On February 4, 2025, Defendant's Board of County Commissioners read Plaintiff's complaints aloud at its public meeting and called for an investigation into Plaintiff's complaints of retaliation.

44. Two days later, on February 6, 2025, Plaintiff was escorted out of the building and placed on administrative leave without explanation.

45. Plaintiff was escorted from the building by two of the managers whom she had accused of retaliation, the same morning that a local news story aired regarding her complaints to the Board of County Commissioners.

46. An investigation was performed, which notably excluded any interview with Plaintiff, and determined in a March 4, 2025 report that Plaintiff's complaints regarding retaliation were unsubstantiated.

47. During Defendant's investigation into Plaintiff's complaints of discrimination and retaliation and into management's response to the same, Defendant's retained attorney contacted Plaintiff to request that she participate in an interview.

48. Plaintiff was diagnosed with an adjustment disorder with anxiety, as well as anxiety, mental impairments for which she has received ongoing treatment from a licensed mental health counselor.

49. Plaintiff's impairment substantially limits one or more of her major life activities, including concentrating, thinking, communicating, and interacting with others, as well as the operation of major bodily functions, including neurological and brain function.

50. Plaintiff's impairment constitutes a "disability" within the meaning of the ADA

51. Plaintiff's impairment constitutes a "handicap" within the meaning of the FCRA.

52. On February 18, 2025, with the documentary support of her treating licensed mental health counselor, Plaintiff submitted a written request to Defendant's human resources department, including its Human Resources Director, for a reasonable accommodation related to her handicap and disability in order to facilitate her participation in Defendant's investigative interview. Defendant's Human Resources Director confirmed receipt of the request.

53. Plaintiff's requested accommodations included the presence of an advocate, advance notice of the interview, and providing Plaintiff with breaks as needed during the interview.

54. Defendant declined to provide Plaintiff with any requested accommodations, and, as a result, failed to interview Plaintiff as part of its investigation into Plaintiff's complaints of retaliation, despite Plaintiff's continued willingness to participate in an investigation and Plaintiff's request to review the request and reschedule the interview.

55. On March 12, 2025, Plaintiff emailed the Board of County Commissioners to oppose Defendant's handling of the investigation into her complaints, Defendant's decision to place her on administrative leave, Defendant's denial of her request for a reasonable accommodation, and Defendant's failure to interview her regarding her complaints of workplace harassment and retaliation.

56. On March 18, 2025, the investigative report was presented to the Board of County Commissioners at a public meeting.

57. Over one month after the investigation concluded, on April 14, 2025, Defendant terminated Plaintiff's employment.

## COUNT I: RETALIATION IN VIOLATION OF FLORIDA'S WHISTLEBLOWER ACT

58. Plaintiff incorporates the allegations made in paragraphs 1, 6-12, 20-22, 26-46, and 55-57 as if fully restated herein.

59. Defendant unlawfully retaliated against Plaintiff, in violation of Florida Statutes section 112.3187 when it terminated her employment based on her objections to a violation of a law, rule, or regulation, specifically, her objections to (a) workplace sexual harassment; and (b) retaliation in response to her reports of workplace sexual harassment.

60. Plaintiff's complaints regarding (a) the security guard's harassment of and discrimination of women because of their sex, and (b) management's failure to properly address the harassment, each of which constitute protected disclosures under Florida Statutes 112.3187(5), which were disclosed in a signed writing.

61. As a result of her termination, Plaintiff has suffered, and continues to suffer financial harm, including, but not limited to, lost wages, benefits, pension contributions, pain and suffering and emotional distress, attorneys' fees, and costs.

WHEREFORE, Plaintiff requests that this Court enter judgment for Plaintiff and against Defendant, reinstate Plaintiff to the same position she held before the adverse action was commenced, or to an equivalent position, or reasonable front pay as alternative relief; reinstate Plaintiff's full fringe benefits and seniority rights; compensation Plaintiff for lost wages, benefits, or other lost remuneration caused by the adverse action; pay Plaintiff reasonable costs, including attorneys' fees, pursuant to § 112.3187(9)(d), Fla. Stat.; pre- and post-judgment interest; and any other and further relief this Court deems just and proper.

**COUNT II: RETALIATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT**

62. Plaintiff incorporates the allegations made in 2, 6-10, 13-14, 20-23, 36-46, and 55-57 as if fully restated herein.

63. Plaintiff engaged in protected activity under the FCRA when she reported sex discrimination and harassment in the workplace to management, including her direct supervisors, human resources, the county administrator, and county commissioners, and when she requested a reasonable accommodation for her handicap and opposed Defendant's denial of that request.

64. Defendant had an ongoing legal obligation to maintain a workplace free of unlawful retaliation.

65. In retaliation for her protected activities, Defendant placed Plaintiff on administrative leave and ultimately terminated her employment.

66. The retaliatory actions were such that they would dissuade a reasonable employee from reporting workplace discrimination and harassment.

67. Plaintiff was deprived of her rights guaranteed by law.

68. Defendant's conduct in response to Plaintiff's protected conduct is unlawful retaliation prohibited by the FCRA.

69. Said acts by Defendant, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre- and post-judgment interest, damages for emotional distress, attorneys' fees and costs, and any other relief that this Court deems is just and proper.

**COUNT III: DISCRIMINATION IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT (FAILURE TO ACCOMMODATE)**

70. Plaintiff incorporates the allegations made in paragraphs 3, 6-10, 13-14, 20-23, and 26-57 as if fully restated herein.

71. Plaintiff suffered from a handicap within the meaning of the FCRA.

72. Plaintiff is and was a qualified individual capable of performing the essential functions of her job with or without an accommodation.

73. Defendant knew about Plaintiff's handicap at the time Plaintiff requested accommodations, including the presence of an advocate, advance notice of the interview, and providing Plaintiff with breaks as needed during the interview.

74. Plaintiff's requested accommodations were reasonable and available and would not have imposed an undue hardship on Defendant, yet Defendant denied them.

75. Defendant failed to engage in the interactive process with Plaintiff as required by the FCRA.

76. Defendant's failure to engage in the interactive process with Plaintiff resulted in its failure to provide Plaintiff an appropriate accommodation.

77. Defendant's refusal to engage in the interactive process with Plaintiff regarding her accommodation request is an illegal act of discrimination barred by the FCRA.

78. Said acts by Defendant, as set forth above, have caused and continue to cause Plaintiff past and ongoing damages.

WHEREFORE, Plaintiff seeks an order prohibiting the discriminatory practices set forth above, an order awarding back pay, front pay, compensatory damages, pre- and post-judgment interest, damages for emotional distress, attorneys' fees and costs, and any other relief that this Court deems is just and proper.

**COUNT IV: RETALIATION IN VIOLATION OF TITLE VII**

79. Plaintiff incorporates the allegations made in paragraphs 4, 6-10, 15, 17, 20-22, 24-46, and 55-57 as if fully restated herein.

80. Title VII prohibits an employer from discriminating against any of its employees because the employee has opposed any practice made an unlawful employment practice by Title VII. 42 U.S.C. § 2000e-3(a). Sexual harassment of an employee because of her sex is an unlawful employment practice under Title VII. 42 U.S.C. § 2000e-2(a)(1).

81. Plaintiff engaged in statutorily protected activity under Title VII when she: (a) reported to her second-line supervisor and department director in August 2024 that a security guard

was sexually harassing her female subordinate; (b) reported the sexual harassment to Defendant's human resources department on approximately August 6, 2024, and reported on August 9, 2024 that the same security guard had directed similar conduct toward other female employees; (c) reported to human resources in August and September 2024, and to the County Administrator on September 15, 2024, that the corrective action notice issued against her was retaliation for her reports of sexual harassment; (d) objected on January 28, 2025 to her performance appraisal's reliance on the retaliatory corrective action notice and reported her supervisor's hostile response to human resources that same day; (e) reported to Defendant's five county commissioners on February 3, 2025 that she was being retaliated against for reporting workplace sexual harassment; and (f) opposed, in her March 12, 2025 email to the Board of County Commissioners, Defendant's handling of the investigation into her retaliation complaints and her placement on administrative leave.

82. At all times, Plaintiff held a good faith, objectively reasonable belief that the conduct she opposed—the sexual harassment of female employees because of their sex, and retaliation against her for reporting that harassment—constituted unlawful employment practices under Title VII.

83. Defendant, including the officials who participated in and made the decision to terminate Plaintiff's employment, had knowledge of Plaintiff's protected activity. The County Administrator, who was the ultimate decision-maker, received Plaintiff's September 15, 2024 complaint of retaliation; the Board of County Commissioners read Plaintiff's February 3, 2025 complaint aloud at a public meeting; and the supervisor and department director who requested Plaintiff's termination were the subjects of Plaintiff's complaints.

84. Defendant subjected Plaintiff to materially adverse actions, including by placing her on administrative leave and escorting her from the building on February 6, 2025, and terminating her employment on April 14, 2025.

85. Defendant's actions well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

86. Plaintiff's protected activity was the but-for cause of Defendant's adverse actions, as evidenced by, among other things: (a) the close temporal proximity between Plaintiff's protected activity and Defendant's adverse actions, including that Defendant placed Plaintiff on administrative leave two days after the Board of County Commissioners read her complaint of retaliation aloud, that Plaintiff's supervisor and department director requested her termination within two days of her January 28, 2025 report, and that Defendant decided to terminate Plaintiff less than four weeks after her March 12, 2025 complaint; (b) the department director's statement that Plaintiff "overstep[ed]" by reporting sexual harassment to human resources; (c) Defendant's acknowledgment that it paused its review of Plaintiff's termination only until the investigation into her retaliation complaints concluded; (d) Defendant's failure to provide Plaintiff any reason for her administrative leave or termination; and (e) Defendant's reliance on reasons that arise from and are inseparable from Plaintiff's protected complaints.

87. Defendant's August 28, 2024 corrective action notice and January 22, 2025 performance appraisal, each of which faulted Plaintiff for her response to and reporting of workplace sexual harassment, further evidence Defendant's retaliatory motive.

88. In addition, and in the alternative, Defendant's actions described above, taken together, constitute a pattern of retaliatory harassment that well might have dissuaded a reasonable

worker from making or supporting a charge of discrimination, culminating in the termination of Plaintiff's employment.

89. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, lost pension contributions, lost earning capacity, emotional distress, mental anguish, humiliation, damage to her professional reputation, and loss of enjoyment of life.

WHEREFORE, Plaintiff requests that this Court enter judgment for Plaintiff and against Defendant; declare that Defendant's conduct violated Title VII; enjoin Defendant from engaging in further retaliatory practices; order Defendant to reinstate Plaintiff to the same or an equivalent position, or, in the alternative, award Plaintiff front pay; award Plaintiff back pay, lost benefits, and prejudgment interest pursuant to 42 U.S.C. § 2000e-5(g); award Plaintiff compensatory damages, including damages for emotional distress, pursuant to 42 U.S.C. § 1981a(a)(1); award Plaintiff reasonable attorneys' fees, including expert fees, and costs pursuant to 42 U.S.C. § 2000e-5(k); award post-judgment interest; and grant any other and further relief this Court deems just and proper.

**COUNT V: DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (FAILURE TO ACCOMMODATE)**

90. Plaintiff incorporates the allegations made in paragraphs 5-10, 16, 18-22, and 24-57 as if fully restated herein.

91. The ADA prohibits a covered entity from discriminating against a qualified individual on the basis of disability, including by not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability, unless

the covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of its business. 42 U.S.C. § 12112(a), (b)(5)(A).

92. At all times material, Plaintiff was an individual with a disability within the meaning of the ADA. 42 U.S.C. § 12102(1)(A).

93. At all times material, Plaintiff was a qualified individual within the meaning of the ADA, in that she possessed the requisite skill, experience, and education for her position as Application Review Supervisor and could perform the essential functions of that position with or without reasonable accommodation. 42 U.S.C. § 12111(8).

94. Defendant had knowledge of Plaintiff's disability and resulting limitations no later than February 18, 2025, when Plaintiff submitted her written request for accommodation supported by her treating licensed mental health counselor.

95. Plaintiff's requested accommodations were reasonable and medically supported.

96. Plaintiff's requested accommodations would not have imposed an undue hardship on Defendant.

97. Defendant denied Plaintiff's requested accommodations, did not propose any alternative accommodation, and failed to engage in a good faith interactive process with Plaintiff to identify an appropriate reasonable accommodation.

98. As a result of Defendant's denial of reasonable accommodation, Plaintiff was excluded from the investigation into her own complaints and ultimately subject to an adverse employment action—termination.

99. Defendant's investigator relied exclusively on the accounts of the managers whose conduct Plaintiff had reported, and Defendant resumed and completed its review of Plaintiff's termination on the basis of that one-sided investigation.

100. As a direct and proximate result of Defendant's unlawful discrimination, Plaintiff has suffered and continues to suffer damages, including lost wages and benefits, lost pension contributions, lost earning capacity, emotional distress, mental anguish, humiliation, and loss of enjoyment of life.

WHEREFORE, Plaintiff requests that this Court enter judgment for Plaintiff and against Defendant; declare that Defendant's conduct violated the ADA; enjoin Defendant from engaging in further discriminatory practices; order Defendant to reinstate Plaintiff to the same or an equivalent position, or, in the alternative, award Plaintiff front pay; award Plaintiff back pay, lost benefits, and prejudgment interest pursuant to 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(g); award Plaintiff compensatory damages, including damages for emotional distress, pursuant to 42 U.S.C. § 1981a(a)(2); award Plaintiff reasonable attorneys' fees, including expert fees, and costs pursuant to 42 U.S.C. § 12205; award post-judgment interest; and grant any other and further relief this Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a trial by jury on all issues so triable.

Respectfully submitted this 5th day of October 2026.

**DELEGAL POINDEXTER**
**& UNDERKOFLER, P.A.**

*/s/ Alexandra E. Underkofler*
T.A. ("TAD") DELEGAL, III, B.C.S
Florida Bar No.: 0892701
JAMES C. POINDEXTER
Florida Bar No.: 116039
ALEXANDRA E. UNDERKOFLER
Florida Bar No.: 1018209
424 East Monroe Street
Jacksonville, Florida 32202
Telephone No.: (904)633-5000

Facsimile No.: (904) 358-2850
Email: tad@delegal.net
Email: james@delegal.net
Email: alex@delegal.net
Secondary email: office@delegal.net
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of October 2026, I filed the foregoing document using the Florida Courts E-Filing Portal, which automatically served a copy to the following counsel for Defendant:

Robert E. Larkin, III
Email: rlarkin@anblaw.com
Michael L. MacNamara
Email: mmacnamara@anblaw.com
Email: lwhite@anblaw.com

*/s/ Alexandra Underkofler*
Alexandra Underkofler
Counsel for Plaintiff

# EXHIBIT
# 1

**Ron DeSantis**
*Governor*

# State of Florida
## Florida Commission on Human Relations

4075 Esplanade Way • Room 110 • Tallahassee, Florida 32399-7020
(850) 488-7082 / FAX: (850) 487-1007
http://fchr.state.fl.us
*United in One Goal: Equal Opportunity and Mutual Respect*

**Mark Miller**
*Chair*
**Keisha Russell**
*Executive Director*

## NOTICE OF STATE RIGHTS – DUAL FILED COMPLAINT

Case Name: *Ava Pyszczymuke v. St. Johns County*

EEOC Number: 510-2026-04319

FCHR Number: N/A

NOTICE OF STATE RIGHTS – Issue Date: September 8th, 2026

The Florida Commission on Human Relations (FCHR) received notice that the U.S. Equal Employment Opportunity Commission (EEOC) completed its investigation of this complaint and issued a Dismissal and Notice of Rights or a Notice of Right to Sue. Since more than 180 days have elapsed since the complaint was initially filed with the EEOC, the complainant may bring a civil action against the person named in the complaint in any court of competent jurisdiction WITHIN ONE YEAR of the issue date of this notice pursuant to Sections 760.11(4) and (8), Florida Statutes. By issuing this notice, the FCHR makes no assurances and takes no position regarding any jurisdictional or statute of limitations issues that may be raised at any future court proceedings. The parties are encouraged to consult with private legal counsel to determine the best course of action in response to this notice. The FCHR will take no further action in this matter.

**COMMISSIONERS**

**CHAD BAYSE,** Vice Chair | **VICKY BUFANO** | **DAWN HANSON** | **MICHAEL KESSIE**

**MARK MILLER,** Chair | **AMANDA NEFF** | **JOSE TAPIA** | **MITCH TORYANSKI**

**JOSE VICENTE**